IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEOFFREY DEWITT FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-398-SPS |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Geoffrey Dewitt Foster, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 12, 1989, and was 31 years old on March 18, 2021, the date his application was filed. (Tr. 34). He was 34 years old at the time of the most recent administrative hearing on November 7, 2023. (Tr. 40). He has completed the ninth grade and has no past work that qualifies as past relevant work experience. (Tr. 33, 356). Claimant asserts he has been unable to work since June 2018, alleging disability due to his left leg being amputated above the knee, rods and screws in his right leg, a bad right ankle, a bone spur in his left hip, post-traumatic stress disorder ("PTSD"), and depression. (Tr. 240, 281).

### Procedural History

Claimant applied for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act) on March 18, 2021. (Tr. 21, 240-49).[3] In a November 28, 2023, decision, the ALJ found Claimant not disabled under the Act since March 18, 2021. (Tr. 21-34). The Appeals Council subsequently denied review (Tr. 5-10), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. The Court has jurisdiction under 42 U.S.C. § 1383(c)(3).

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had severe impairments of amputation; fracture of the lower limb; respiratory

---

[3] Although Claimant alleged he became disabled in June 2018, the Act precludes payment of SSI prior to the month in which Claimant filed his application. (Tr. 21, 240-49). 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335. Accordingly, the relevant adjudicatory period for Plaintiff's SSI application was from the March 2021 application date through the ALJ's decision date in November 2023. *See* 42 U.S.C. § 1382(c)(7); 20 C.F.R. §§ 416.330, 416.335.

failure; PTSD; major depressive disorder, and generalized anxiety disorder (20 CFR 416.920(c)). (Tr. 23).

Next, he found that Claimant's impairments did not meet a listing. (Tr. 24). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except as follows:

> the claimant is able to sit for 6 hours in an eight-hour day and stand and/or walk for 2 hours in an eight-hour day. He is capable of occasional climbing of ramps and stairs, and occasionally balancing, stooping, kneeling, crouching, and crawling. He should not climb ladders, ropes, or scaffolds. He should not have exposure to unprotected heights or scaffolding. He should have no more than normal level of exposure to gases, fumes, noxious odors, pulmonary irritants, or poor ventilation, where normal is defined as the level generally found in a commercial setting. He should have no exposure to extreme temperatures or humidity, where normal levels are defined as temperatures between 68 and 76 degrees Fahrenheit and normal humidity defined as between 40% to 60%. His work would need to be simple and detailed, with no complex tasks. His work needs to be repetitive, routine, and rote. He is capable of occasional contact with coworkers and supervisors, but should have no contact with the general public, so he is working with things rather than people. The claimant should have no strict production standards, such as fast paced integral team assembly line work or meat processing. However, he can remain on task and attentive to duties for 2 hours at a time before needing a 15-minute break.

(Tr. 27).

The ALJ found that although Claimant has no past relevant work, there are other jobs that exist in the national economy that Claimant can perform. (Tr. 33-34).

### Review

Claimant contends, *inter alia,* the ALJ failed to state whether he found no determinable medical impairment at step two or a non-severe medical impairment that required no functional limitations in the RFC at step four. The Court agrees and the decision of the ALJ must therefore be reversed.

The relevant evidence before the ALJ reflects that Claimant was in a car accident on November 13, 2015, coming home from work and lost his leg. Since then, Claimant testified he has been unable to work and is unable to do a sit-down job because of a bone spur in his hip. He said he has post-traumatic stress disorder from the accident. Claimant also testified he has depression and finds it hard to focus. He testified he falls down all the time and spends most of his time lying down. He said his prosthetic does not fit properly and comes off; he also said he lost the charger so the prosthetic does not work as it should and he is unable to afford a new one, or new parts due to lack of insurance. Claimant reported he was homeless and currently living in a tent by the river. (Tr. 27, 40-67).

Medical records reveal that after the November 13, 2015, motor vehicle accident, Claimant required Life Flight air transport services to St. Francis Hospital for treatment of acute respiratory failure; a right closed tibia/fibula fracture; aspiration in airway requiring bronchoscopy; closed fracture of the shaft of the left femur; bacterial pneumonia; wound infection of the left AK wound stump, requiring revision twice; abdominal compartment syndrome requiring decompressive laparoscopy; inability to intubate requiring emergent tracheotomy; acute blood loss anemia with hypovolemic shock; fractures left transverse processes of lumbar vertebra 1 and 2; foreign bodies over left hip and pelvis; bilateral fibula/tibia fractures; closed fracture of the right ankle requiring open reduction and fixation; appendectomy; ankle injury of left lower leg requiring amputation; and dysphagia, resolved. (Tr. 360-530).

In December 2015, his care was transferred to Tahlequah Health system for rehabilitation. (Tr. 583-809). While there, Claimant had an episode of acute cholecystitis, but did not require surgery. (Tr. 699-808). He apparently had difficulty learning to transfer from a sitting to a standing position and ultimately was discharged to full time outpatient care. (Tr. 775-794).

He received his prosthetic leg in December 2015 and spent the next 19 months learning to use it, both with and without assistive devices. (Tr. 830-880). His pain continued and consideration was given to supplying a spinal cord stimulator, but there is no documentation of this being performed. (Tr. 888-902).

Claimant visited his orthopedist in June and August of 2016, complaining of right foot pain. (Tr. 814-815). He was diagnosed as having chronic regional pain syndrome of the right lower extremity. *Id.* He complained of left hip pain and x-rays demonstrated a "large calcification osteophyte of the area of the femoral neck." He was hoping to go back to work. (Tr. 816-817). At his hearing he explained how this bone spur interfered with prolonged sitting. (Tr. 46). He complained that his prosthetic left leg no longer fit. (Tr. 333).

In March 2018, Claimant complained of stump pain and had a palpable nodularity present. (Tr. 826). In June 2018, he complained to his orthopedist that he had phantom pain on the left, and he failed both the judgment questions. In September 2018, Claimant was noted to have a bunion deformity of the right foot making walking painful, and even causing pain when putting a shoe on his right foot. The bunion was one to two centimeters in dimension requiring surgical debridement. (Tr. 819-820). His narcotic medications were decreased. (Tr. 820).

In June 2019, he was requiring 20 milligrams of oxycodone every six hours to keep his pain level from six to ten of ten in strength; he requested consultations with an orthopedist and a podiatrist. (Tr. 821-823). In May through December 2020, Claimant had several visits to NeoHealth Tahlequah Health Center to apply for an emotional support animal. (Tr. 332-340).

Claimant was evaluated by a physical consultative expert ("*CE*") on June 28, 2022, who noted that Claimant had to hold on to his prosthesis in order to ambulate, it was missing parts, and he had no charger for the limb. He was homeless and had no money or insurance for repairs. He

had a history of PTSD from the motor vehicle accident and anxiety. (Tr. 346). He had an unstable gait due to the broken prostheses that slowed his gait. He also had a palpable bone spur on the left hip, arthritic changes in the right ankle with decreased range of motion of that joint and the spine. (Tr. 346-350).

Claimant had a mental CE appointment on August 20, 2022. (Tr. 355-358). He reported that his charger had been stolen. Being homeless he had no access to washing facilities. In his childhood he suffered daily beatings by his father. He was in special education classes in school and finished the ninth grade. His screening tests for anxiety, depression, and PTSD were elevated with anxiety being the greatest at 19/21. He scored below normal on the MoCA test and failed both judgment questions. His diagnoses were: PTSD; major depressive disorder, moderate; generalized anxiety disorder; and rule out unspecified cognitive disorder. *Id.*

Claimant alleges that although the ALJ noted one of the impairments he complained of was a severe bone spur on his left hip bone that interfered with sitting (Tr. 47, 816-817), this impairment was never addressed by the ALJ. This bone spur was found to be present on x-ray and was palpable at the physical CE at the time of his examination along with arthritis of the hips and his right foot. (Tr. 346-350).

The effects of all impairments should be considered throughout the disability determination, and failure to consider all of Claimant's impairments is reversible error. *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006) (emphasis added). A non-severe impairment is any impairment or combination of impairments that do not significantly interfere with the ability to perform basic work activities. *Pamela R. v. Kijakazi*, 2022 WL 2670038 (D.Utah 2022) (unpublished); 20 *CFR* §§416.920(a), 416.921, and 416.923. The ALJ overlooked that he must discuss and account for both severe and non-severe impairments in formulating a claimant's RFC.

*Mushero v. Astrue,* 384 Fed.Appx. 693, 695-696 (10th Cir. 2010); 20 *CFR* §416.945(e). *Also see Carpenter v. Astrue*, 537 F.3d 1264, 1265-1266 (10th Cir. 2008) and *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ must include all impairments in the RFC, even those that are non-severe, and failure to do so prevents a meaningful review and indicates the need for a remand. *Syreetta W. D. v. Kijakazi*, 2022 WL 1109817 (N.D.Okla. 2022) (unpublished). In this case, the ALJ failed account for the effects of Claimant's bone spur and therefore failed to do follow his own regulations. *Wells v. Colvin*, 727 F.3d 1061, 1065 & n. 12 (10th Cir. 2013), *citing Grotendorst v. Astrue*, 370 Fed.Appx. 879, 883-884 (10th Cir. 2010). The decision of the Commissioner must accordingly be reversed, and the case remanded to the ALJ for further analysis.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. If on reconsideration the ALJ finds that any changes must be made to Claimant's RFC, he should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

Accordingly, the Court finds the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

IT IS SO ORDERD this 4TH day of June, 2025.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**